UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JEFFREY G. DOUGLAS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| VS. | )   No. 14-1029-JDT-egb |
| | ) |
| DEBORAH BEASLEY, ET AL., | ) |
| | ) |
|     Defendants. | ) |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On February 7, 2014, Plaintiff Jeffrey G. Douglas ("Douglas"), who is currently an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On February 10, 2014, this Court ordered Douglas to comply with 28 U.S.C. §§ 1915(a)(1)-(2) or pay the civil fling fee. (ECF No. 3.) On March 28, 2014, Douglas filed a second motion to proceed *in forma pauperis*. (ECF No. 4.) In an order issued March 31, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5) On February 17, 2016, Douglas filed a motion to remove defendants Deborah Beasley and the Lake County Sheriff (ECF No. 75), which the Court granted (ECF No. 87 at 4). Therefore, the Clerk shall record the Defendants as the Tennessee Department of Correction ("TDOC") and Lori E. Avery.

I. The Complaint

Douglas's docket includes over eighty different entries. Many of these additional entries consist of documents clearly intended to be used as evidence for the case or providing Douglas's opinion about the complaint without adding additional factual allegations. Additionally, Douglas adds and removes defendants through various filings. The court will best summarize Douglas's claims to comport with Federal Rule of Civil Procedure 8(a) and include only those claims against the remaining Defendants.

Douglas alleges that since being transferred to NWCX he has experienced resistance with the "Legal Aid[e]s" assigned to the library. (ECF No. 1 at 1.) After a legal aide misled Douglas into filing the wrong form and thereby causing a petition to be dismissed, Douglas began preparing his work *pro se*. (*Id.* at 1-2.) In mid-2013, Defendant Avery became the correction officer ("C/O") at the library, working Sundays, Mondays, and half-day Tuesdays. (*Id.*) Douglas asserts there was an altercation with Avery "in which [he] exnored"[1] (*id.* at 3); however, Douglas began avoiding the library on days Defendant Avery worked in order to stop the altercations (*id.*). Douglas contends that on December 29, 2013, after two inmates spoke with him briefly, Defendant Avery told both the other inmates and Douglas that they could not speak with Douglas because he was not a legal aide. (*Id.*) Douglas finished his legal research, returned to his assigned guild, and contacted internal affairs, who did not respond until Douglas contacted them a second time around January 9, 2014. (*Id.*) On January 21, 2014, upon returning to the library, Douglas was again approached by another inmate and was again talked to by Defendant Avery who intimated to Douglas that he needed to leave. (*Id.* at 4.)

---

[1] It is not clear from the context of the complaint what Plaintiff means by the word "exnored".

On January 22, 2014, Douglas prepared an affidavit calling for the arrest of Avery for harassment and intimidation under Tennessee law, which was mailed to the Lake County Sheriff's Office and to Defendant Avery on the following day. (ECF No. 1 at 4-5.) On February 3, 2014, Douglas was told to pack his bags and was moved to segregation. (*Id.*) Douglas contends this was due to a disciplinary report (*see* ECF No. 7) made by Avery accusing Douglas of attempting to intimidate an employee. (*Id.* at 5.) Douglas avers that Defendant Avery was retaliating against him because he filed a complaint against her with the Lake County Sheriff's Office. (*Id.*; *see also* ECF No. 5-4.)

Douglas believes that Defendant Avery, Officer J. Avery, and a third individual named Avery at the Lake Sheriff's Office are related, thus causing bias or conflict towards Douglas in this matter. (*Id.* at 6.)

Douglas contends that Defendant Avery may be discriminating based on color and holding individuals to different standards to perform or be permitted to attend the library and that Defendant Avery is depriving him of his rights by not allowing him to speak to another person in the library. (*Id.* at 7.)

Douglas alleges that on June 17, 2014, he completed four inmate request forms requesting emergency contact with counsel. (ECF No. 29.) As of June 24, 2014, he had not received a response. (*Id.*)

Douglas alleges that on March 4, 2014, he went to the library for a job slip, but Defendant Avery denied him access because they had not called "school."[2] (ECF No. 8 at 2.) He states that per an unsigned notice, inmates were not allowed to come to the library until they called school. (*Id.*) Douglas contends that Defendant Avery is using different standards for

---

[2] Douglas does not define what he means by saying they had not "called school."

access to the library and continues to retaliate against him for filing the complaint. (*Id.*) Douglas similarly alleges[3] that on June 30, 2014, Defendant Avery refused him access to the law library and refused to allow him to copy the TDOC policy.[4] (ECF No. 32 at 2.)

Douglas additionally alleges that around February 2014, Defendant Avery "solicited" him by stating, "If you give me 25 green Dots a month, no one will bother you." (ECF No. 31 at 2.) Douglas explains that he learned that green dots meant money and that Defendant Avery was allegedly seeking $25 a month for protection from other inmates and staff. (*Id.* at 2-3.)

Douglas contends that on November 9, 2015, two outgoing mail envelopes marked "Legal Mail" were returned to Douglas for insufficient postage and both envelopes were opened without Douglas's consent. (ECF No. 66 at 2-3.) Douglas contends that NWCX mail staff is ignoring his mail and have violated federal regulations by opening mail not addressed to them. (*Id.* at 3-4.) Douglas alleges a similar incident on November 17, 2015, where NWCX mail staff opened legal mail without Douglas's consent. (ECF No. 67.)

In a "medical affidavit" Douglas seeks the arrest of Amanda Collins, Tommy Hamilton, Michael Parris and Mrs. Springer, employees at NWCX who are not parties to this complaint, for attempted murder for deliberately denying Douglas medical treatment for Douglas's diagnosed kidney failure. (ECF No. 69.)

Douglas further alleges that on May 25, 2016, Ruth Long and an unidentified Pro-Social Counselor threatened his person with a Class A write-up and reclassification if Douglas refused to take a class he did not ask to take. (ECF No. 79 at 1.) On May 24, 2016, Douglas submitted a sick call for medical stress relief due to the aforementioned threat and bullying. (*Id.*)

---

[3] Douglas contends the complaint should be filed under "res ipsa loquitor," which is inapplicable in the context of this case.

[4] Douglas does not specify what TDOC policy he was trying to access.

Douglas alleged that after being threatened and bullied by Long and the Pro-Social Counselor, he was forced into a "Pro-Social" program on May 31, 2016. ECF No. 80 at 1.) Since then, Douglas has requested to see the doctor several times, but has been refused; however, he saw Nurse Amanda Collins on June 2 and June 6, 2016. (*Id.*) On June 16, 2016, Douglas fell from the top bunk; after which correctional officer Forrest contacted the clinic. (*Id.*) Douglas relied on medical calling him to be examined, but by 6:00pm, he had not been seen. (*Id.*) Douglas tried to request an appointment on June 16th but was refused; therefore, Douglas went to sick call on June 17, 2016, and had to pay $3.00. (*Id.*) The nurse determined Douglas had not broken any bones and placed Douglas on the list to see a doctor, but as of the time of the filing, Douglas had yet to see a doctor. (*Id.*) Similarly on June 22 and June 24, Douglas placed sick call requests, paid $3.00, was seen by a nurse, but was refused the right to see a doctor. (*Id.* at 2.) Douglas has filed two grievances due to the denial to see a doctor. (*Id.*)

Douglas contends the people in the "Pro Social" program lose their right to go to the library except for Wednesdays, Saturdays, and Sundays. (*Id.*) Douglas also alleges that he is being denied the right to get an education because there are restrictions in the library accommodations as well as the aforementioned restrictions on the days he may go to the library. (*Id.* at 3.) Douglas finds that the "Pro Social" program is interfering with his health and is trying to brainwash him into believing he has done something wrong and has no social skills even though at the time of his arrest, Douglas had worked for others, had no criminal record, and held both a valid handgun and commercial driver's license. (*Id.* at 4.) Douglas contends that he was wrongfully placed in the "Pro Social" program as retaliation. (*Id.*)

Douglas also alleges that he was denied due process at a disciplinary board hearing where he refused to sign a "rigged" guilty plea and where he was only allowed two witnesses. (ECF

No. 81 at 1.) Douglas also reiterates that inmates continue to have difficulty getting library passes. (*Id.* at 3-4.)

Douglas seeks the production of documents as well as $25,000 in punitive damages. (ECF No. 1 at 8; *see also* ECF 81 at 4.)

II. Analysis

A. Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without

some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R.

7

Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B. § 1983 Claim

Douglas filed his complaint pursuant to actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Claims against TDOC are construed as claims against the State of Tennessee. Plaintiff cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Douglas alleges that he has been discriminated against, he does not have a viable equal protection claim. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Most Equal Protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro.*

*Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). The complaint does not allege that Plaintiff is a member of a protected class.[5] That Plaintiff may have been treated differently than other prisoners is insufficient to state a claim because prisoners are not a protected class for equal protection purposes. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Heddleston v. Mack*, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items weighing more than one pound on January 9, 1999, do not constitute a protected class"); *Aldred v. Marshcke*, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Preston v. Hughes*, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("neither indigents nor prisoners are a suspect class"); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

This also is not an appropriate case for a "class of one" Equal Protection claim:

The purpose of [the Equal Protection Clause] is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. . . . Equal protection challenges are "typically . . . concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (internal quotation marks and citation omitted). However, the Supreme Court has recognized that a "class-of-one" may bring an equal protection claim where the plaintiff alleges that: (1) he or "she has been intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

---

[5] Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. This case does not involve the exercise of a fundamental right.

*United States v. Green*, 654 F.3d 657, 650-51 (6th Cir. 2011) (additional internal quotation marks and citation omitted); *see also Davis v. Prison Health Servs.,* 679 F.3d 433, 441 (6th Cir. 2012) (distinguishing "class of one" claims from other equal protection claims evaluated under the rational basis standard).

The complaint does not allege any facts suggesting that Douglas was arbitrarily treated differently than similarly situated prisoners at the jail or that he has a valid claim for a "class of one."

Douglas claims that Defendant Avery is preventing him from having access to the library and legal materials and that the NWCX staff is also restricting his access as well as opening his legal mail without consent. However, the complaint does not assert a valid claim for denial of Douglas's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182 F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The complaint does not allege that Douglas suffered any such injury because of the Defendant Avery or other NWCX staff member's actions.

Douglas claims that Defendant Avery "solicited" him for protection money and that he was threatened and harassed into taking a class are construed as claims of verbal abuse. For a convicted prisoner, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d

513, 525 (6th Cir. 2004). The Constitution "'does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 349). "[R]outine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Defendants "defamatory" comments do not satisfy the objective component of an Eighth Amendment claim. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." (citation omitted)); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts." (citation omitted)); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich.

13

Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights. Verbal threats and abuse made in retaliation for filing grievances are likewise not actionable." (citation omitted)). Thus, Douglas has no cause of action for comments made by Defendant Avery, by Ruth Long, or by the Pro-Social Counselor

Additionally, Douglas cannot compel any criminal prosecution of any defendant. As a private citizen, Douglas has no authority to initiate a federal criminal prosecution of any defendant for alleged unlawful acts. *Kafele v. Frank & Wooldridge Co.*, 108 Fed. App'x 307, 308-09 (6th Cir. 2004) (citing *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Hamilton v. Reed*, 29 Fed. App'x 202, 204 (6th Cir. 2002) (same). The decision of whether to institute state or federal criminal proceedings is a decision committed wholly to the discretion of the State District Attorney or the United States Attorney. This Court cannot order charges against a defendant or other party or that a defendant or other party be charged with a crime.

Douglas has alleged he was falsely put into segregation and into the "Pro Social" program. This Court does not have the authority to supervise classification and assignment of inmates. An inmate does not have a constitutionally protected right to be assigned to a particular program, prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976). *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship" "in relation to the ordinary incidents of prison life").

Douglas claims that he was only allowed to present two witnesses at his disciplinary hearing, but these allegations are not brought against any named Defendant. A prisoner who

faces the loss of good time credit has a protected liberty interest and is entitled to procedural due process in the disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539 (1974). In this case, Douglas does not actually allege whether he was convicted of the offense or state the punishment that was imposed. However, even if Douglas was convicted and lost good time credit as a result, his claim for money damages is not cognizable because a judgment in his favor on the procedural due process claim would necessarily imply the invalidity of the punishment imposed. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Douglas also appears to claim (*see* ECF No. 80 at 4) that his placement in the Pro-Social program was in retaliation for filing a document in this case titled "Threatening and Bullying by NWCX" in this case in May 2016 (ECF No. 79). He also claims that Defendant Avery retaliated against for him filing a complaint against her with the Lake County Sheriff's Office. (ECF No.1 at 5.) "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The allegation of retaliation regarding the Pro-Social program is not directed toward any named Defendant. Plaintiff alleges he was placed in the program by Ruth Long, who is not a

party, and he does not allege that she was aware of the document he filed in this action in May 2016.

Douglas alleges that Defendant Avery retaliated against him when she had him charged with a disciplinary violation for attempting to file a criminal complaint against her with the Lake County Sheriff's Office. (ECF No. 1 at 5.) Avery also allegedly limited Douglas's access to the law library for the same reason. (ECF No. 8 at 2.) A prisoner has an "undisputed First Amendment right" to file grievances and complaints against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, if the complaints are frivolous, the right is not protected. *Lewis v. Casey*, 518 U.S. 343, 353 (1996).

The complaint Douglas attempted to file against Defendant Avery asserted that she was guilty of Civil Rights Intimidation and Harassment and of Stalking under Tennessee law. The complaint was based solely on Avery's refusing to permit Douglas to talk to other inmates in the library. (ECF No. 5-4.) That complaint clearly is frivolous and, therefore, is not protected by the First Amendment. Accordingly, Douglas has no retaliation claim against Defendant Avery.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically

must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, leave to amend is not warranted.

## IV. Conclusion

The Court DISMISSES Douglas's complaint as to the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to Amend is DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the fourth dismissal of one of his cases as frivolous or malicious or for failure to state a claim was assessed on April 28, 2015, before this case was screened.[6] This "strike" will take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[6] *See Douglas v. Plunk,* No. 11-1219-JDT-egb (W.D. Tenn. July 5, 2012) (dismissed for failure to state a claim), *Douglas v. Gregory,* No. 14-1302-JDT-egb (W.D. Tenn. Apr. 13, 2014) (dismissed for failure to state a claim); and *Douglas v. F.S.*, No. 15-1046-JDT-egb (W.D. Tenn, April 24, 2015) (dismissed for failure to state a claim).

28 U.S.C. § 1915(g). Consequently, Plaintiff is now barred from filing any further actions *in forma pauperis* while he is a prisoner within the meaning of 28 U.S.C. § 1915(h) unless he is in imminent danger of serious physical injury. Therefore, if any civil action filed by Plaintiff while he is incarcerated is not accompanied either by the entire civil filing fee or by allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury, the complaint will be filed, but Plaintiff will be required to remit the full civil filing fee. If he fails to do so, the case will be dismissed, and the filing fee will be assessed from his inmate trust account without regard to the installment procedures of 28 U.S.C. §§ 1915(a)-(b).

Plaintiff is cautioned that, if he attempts to evade the § 1915(g) restriction by filing actions in other jurisdictions that are then transferred or removed to this district, the Court may impose a monetary sanction in the full amount of the civil filing fee.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE